IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| KEVIN M. STUBBS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. CIV-14-399-F |
| CAROLYN W. COLVIN, acting Commissioner Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Kevin Stubbs (Plaintiff) brings this action under the Social Security Act for judicial review of the Defendant Acting Commissioner's (Commissioner) final decision denying his application for disability insurance benefits. *See* 42 U.S.C. § 405(g). United States District Judge Stephen P. Friot has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b).

Following a careful review of the administrative record (AR), the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the decision of the Commissioner. *See* 42 U.S.C. § 405(g).

**I.  Determination of disability.**

Plaintiff alleges disability as of October 28, 2008, at the age of forty-six. AR 188. The Social Security Act defines "disability" as the "inability to engage

in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps).

Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *see also Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he succeeds, the administrative law judge (ALJ) will conduct a residual functional capacity (RFC) assessment at step four to determine what Plaintiff can still do despite his impairments. *See* 20 C.F.R. § 404.1545(e); *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993).[1] Then, if Plaintiff shows he can no longer engage in his past relevant work, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir.

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1945(a)(1).

1984).

## II. Analysis.

### A. Standard of review.

The court reviews the Commissioner's final "'decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied.'" *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.2007). A decision is not based on substantial evidence "'if it is overwhelmed by other evidence in the record.'" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir.2009) (citation omitted). The court will "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'" *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### B. Claims of error.

Plaintiff maintains the ALJ erred at step four of the sequential inquiry in finding he could perform his past relevant work as a pharmacy manager. Doc. 13, at 2. He contends "the ALJ committed reversible error for two reasons": (1) "the ALJ failed to perform a proper analysis when determining [Plaintiff] had the [RFC] to perform his past relevant work" and (2) "the ALJ erred in his credibility analysis." *Id.* He relies on the Tenth Circuit's decision in *Winfrey v.*

3

*Chater*, 92 F.3d 1017 (10th Cir. 1996), where the court explained as follows:

> Step four of the sequential analysis, at which the ALJ found [the claimant] not disabled, is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC) . . . and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520[f]. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *See* SSR 82-62, Soc. Sec. Rep. Serv., Rulings 1975-1982, 809; *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir.1993). At each of these phases, the ALJ must make specific findings. *See Henrie*, 13 F.3d at 361.

*Id.* at 1023. Plaintiff claims error at each of the three phases. Doc. 13, at 2-15.[2]

### 1. Whether the ALJ erred at phase one in evaluating Plaintiff's RFC.

Plaintiff points to his testimony "that he had constant pain in his neck, low back, right leg and left shoulder" and "that these impairments limited his ability to reach, lift, stand, sit, and walk" and he "argues that the ALJ did not appropriately address the issue of his pain as a disabling nonexertional impairment in a manner sufficient to comply with *Luna v. Bowen*, 834 F.2d 161

---

[2] Plaintiff faults the ALJ's credibility analysis in his second claim of error. Doc. 13, at 9-15. Nonetheless, as Plaintiff recognizes, "the ALJ's credibility and RFC determinations are inherently intertwined," *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009), and, by asserting error in the ALJ's credibility assessment, he "asserts that the ALJ's assessment of his RFC is also incorrect." Doc. 13, at 15. So, the undersigned begins this analysis with Plaintiff's second claim of error, his challenge to the ALJ's findings at phase one of step four.

(10th Cir. 1987)." *Id*. at 9. He credits the ALJ's "attempt[] to comply with this standard," but submits "he fell short. (Tr. 74-7)." *Id*. at 9-10.

To support this contention, Plaintiff documents a series of medical interventions involving his left shoulder, lower back, and neck – surgery; epidural steroid injections; physical therapy; Lortab; Soma – and a series of objective medical findings including disc protrusions, disc bulge, foraminal narrowing, and joint arthrosis. *Id*. at 10-11. He notes the ALJ's finding that Plaintiff was severely impaired by "'cervical and lumbar degenerative disc disease; and left shoulder impairment, status post February 2009 surgical repair'" and submits "this finding alone supports that he has impairments that comprise pain-producing ailments." *Id*. at 11 (quoting AR 73). He "asserts that he met the first prong of *Luna*." *Id*. He claims "[a] nexus can be found between the symptoms [he] testified to and the conditions found severe by the ALJ and supported by the record." *Id*.

Plaintiff concludes that "under *Luna*, the ALJ should have found [his] testimony credible concerning limitations associated with pain and when viewing his testimony with the medical evidence" and faults the ALJ's use of boilerplate language. *Id*. at 11-12. He maintains the ALJ "failed to properly account for [his] pain in formulating his RFC and determining what work, if any, he could perform with his level of pain." *Id*. at 12. He contends "[t]he ALJ

5

did not 'closely and affirmatively' link any substantial evidence of record to support his conclusion that [he] was not entirely credible." *Id.* at 13 (citing AR 74-77). Plaintiff also challenges the ALJ's reliance on his ability to perform various daily activities and "asserts that the ALJ did not sufficiently explain why and what parts of [his] testimony he rejected for being 'not entirely credible.'" *Id.* at 14-15.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir.2005) (citation, brackets, and internal quotation marks omitted). An ALJ's credibility findings reflect his consideration of Plaintiff's allegations of disabling symptoms in order to "'decide whether he believe[d] them].'" *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (citation omitted). In making this determination, an ALJ should consider factors such as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical

6

evidence.

*Wilson v. Astrue*, 602 F.3d 1136, 1145 (10th Cir. 2010) (internal quotation marks omitted). But, as long as the ALJ provides the specific evidence he has relied on in assessing a claimant's credibility, "a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ acknowledged Plaintiff's "testi[mony] that he is disabled due to pain in the neck, shoulders, and lower back." AR 75. He documented Plaintiff's description of his difficulties with his left shoulder, "including pain, numbness in the left arm and hand" "aggravated by lifting and quick movements." *Id.* He noted Plaintiff's claim "that his back pain radiates into the right foot and is associated with muscle spasms." *Id.* He also noted Plaintiff's description of his "medication side effects including racing of the heart and blurred vision" and of his estimation that "he is limited to sitting 20 to 30 minutes, standing 15 to 20 minutes, walking one-half to one block, and lifting ten pounds; with additional significant limitations on squatting, bending, and gross and fine finger dexterity with the left hand." *Id.* Finally, he noted that Plaintiff "stated that he also treats his pain with topical heat and cold[.]" *Id.* The ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . ., [Plaintiff's] statements concerning the

7

intensity, persistence and limiting effects of these symptoms are not entirely credible *for the reasons explained in this decision.*" *Id.* at 75-76 (emphasis added). He then documented those reasons, focusing first on Plaintiff's daily activities.

In gauging the believability of Plaintiff's alleged limitations, the ALJ examined how Plaintiff has spent his days since his claimed onset of disability in October 2008. He noted that Plaintiff's daily living activities included "meal preparation, cleaning, vacuuming, driving, and pet care" and "personal care, washing dishes, taking out the trash, . . . shopping in stores, paying bills, handling a savings account, using a checkbook/money orders, attending church, . . . and reading." *Id.* at 76. Plaintiff acknowledges that "he indicated he performed the activities" but "indicate[d] he did them sporadically and for short duration." Doc. 13, at 13. He faults the ALJ for selectively citing his statements regarding his daily living activities and for taking his statements out of context, and he claims the ALJ failed to accurately his portray his statements regarding his activities. *Id.* at 13-14.

To the contrary, the ALJ's description was apt. In January 2012, well after his alleged onset of disability in October 2008, Plaintiff advised the Social Security Administration he "put out water & food for house dog"; he had "NO PROBLEM with personal care," "once in awhile need[ing] help" with dressing

and bathing "due to pain"; he spent fifteen minutes preparing his own lunch – microwave dinners and sandwiches – on a daily basis; he was "able to . . . wash lunch dishes, run vacuum occas[]ion[al]ly, trash" and he took "15 - 30 mins" to do so; he "tr[ied] to go outside daily" and did so by walking, driving a car, and riding in a car; his wife usually did the driving but that he did so for "short trips"; he shopped in stores once a week for milk; he could pay bills, count change, handle a savings account, use a checkbook/money orders; he watched television and read "everyday" and did so "well"; and he visited with family and went to church "everyday." AR 233-40.

Plaintiff objects to the ALJ's reliance on this information and points to his testimony at his administrative hearing, for example, that he does not take out the trash and that his wife must help him with bills and the checking account. Doc. 13, at 14. But Plaintiff's provision of varying versions of his activities in his subsequent testimony does not somehow negate previous statements he made about his daily life since allegedly becoming disabled on October 28, 2008. When questioning Plaintiff at his March 2013 administrative hearing about his household and daily routines, the ALJ specifically asked him to remember that "we are talking about a period since October 2008, almost four and a half years ago, so if you used to do some of these things but don't do them any longer I need to know that . . . ." AR 107-08. Plaintiff then testified, for instance, that he had

9

not attended church since 2008. *Id.* at 112. In challenging the ALJ's findings that counted Plaintiff's church attendance as a daily living activity, Plaintiff does not explain why the ALJ should have credited only that March 2013 testimony when he had advised in January 2012 he went to church "everyday." *Id.* at 237. Plaintiff has failed to demonstrate that the ALJ erred in concluding that his activities of daily living belie his claim of *disabling* limitations and pain.

The ALJ then documented discrepancies between Plaintiff's alleged symptoms and limitations and the objective medical evidence. *Id.* at 76-77. Plaintiff challenges the ALJ's analysis, claiming that "[a]lthough the ALJ listed off the medical evidence of record, he failed to mesh the medical evidence with [Plaintiff's] testimony. (Tr. 74-7)." Doc. 13, at 12.

To the contrary, the ALJ summarized Plaintiff's subjective complaints – disabling neck, shoulder, and back pain; left hand and arm numbness; back pain radiating into right foot with muscle spasms; ten pound lifting limitation; squatting and bending limitations – and then noted that Plaintiff suffered an October 2008 work-related musculoskeletal injury and required left shoulder surgery in February 2009. AR 75-76. The ALJ further noted that after cervical epidural steroid injections, Plaintiff was doing better on surgical follow-up in June 2009. *Id.* at 76. The ALJ also documented that Plaintiff then voiced new complaints about back and right hip pain but in subsequent physical

examinations was found to ambulate with a normal gait with only mild straight leg raising findings. *Id.* at 76-77. He had normal motor and sensory findings. *Id.* He had minimal paraspinous muscle tenderness and no sciatic tenderness. *Id.* at 77. And, he was released for work with lifting restrictions that varied over the next few years between fifteen and twenty-five pounds. *Id.*

The ALJ properly and sufficiently explained the required link between the evidence of record and his finding that Plaintiff's allegations of *disabling* pain and other limitations were not entirely credible. As to Plaintiff's claim that the ALJ failed to "sufficiently explain why and what parts of [his] testimony he rejected for being 'not entirely credible,'" Doc. 13, at 15, "although the ALJ may not have identified any specific incredible statements as part of his evaluation of [Plaintiff's] hearing testimony, his approach performed the essential function of a credibility analysis by indicating to what extent he credited what [Plaintiff] said when determining the limiting effect of [his] symptoms." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012).

The ALJ's determination – that Plaintiff's subjective complaints are not entirely credible – is supported by substantial evidence and free from legal error. Plaintiff's sole challenge to the following RFC assessment by the ALJ at phase one of step four is unavailing:

> [Plaintiff] has the residual functional capacity to perform less than

a full range of "light work," as defined in 20 CFR 404.1567(b), in that [Plaintiff] can only . . . occasionally climb, balance, stoop, kneel, crouch, and crawl; never reach overhead with his non-dominant left upper extremity; and, as to reaching below overhead level, frequently reach, handle, finger, and feel with his non-dominant left upper extremity.

*Id.* at 74 (footnote omitted).

### 2. Whether the ALJ erred at phase two in determining the demands of Plaintiff's past relevant work.

Plaintiff "submits the ALJ erred by finding that he could return to his PRW because the ALJ did not make specific findings regarding the demands of his PRW." Doc. 13, at 2.³ At step four, Plaintiff "bears the burden of proving his inability to return to his particular former job *and* to his former occupation as that occupation is generally performed throughout the national economy." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (emphasis added); *see also* SSR 82-61, 1982 WL 31387, at *2. The ALJ has a duty "of inquiry and factual development" and is required at the second phase of the step-four inquiry to make specific findings as to the demands of a claimant's past relevant work. *Henrie,* 13 F.3d at 361.

The ALJ made the following findings at the second (and third) phases of

---

³   PRW – past relevant work – "is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).

12

step four:

> The claimant is capable of performing past relevant work as a Pharmacy Manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> The impartial vocational expert [VE] testified at hearing that the claimant had past relevant work as a Pharmacy Manager (D.O.T. Code #074-382-010), semiskilled (SVP 3), light work. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, and considering the testimony of the impartial vocational expert at hearing, the undersigned finds that the claimant is able to perform his past relevant work as a Pharmacy Manager as actually and generally performed. It is noted that, based on the testimony of the impartial expert at hearing, even if the claimant could only lift, carry, push, and pull a maximum of 15 pounds, at least 50% of Pharmacy Manager jobs would remain.

AR 77-78.[4]

Plaintiff claims the ALJ failed to "make any findings of fact regarding the physical and mental demands of [Plaintiff's] PRW as a Pharmacy Manager." Doc. 13, at 4. He maintains "[t]his is significant considering the fact that the ALJ included in [Plaintiff's] RFC postural – climbing, balancing, stooping, kneeling, crouching, and crawling – limitations, as well as manipulative –

---

[4] Although Plaintiff fails to raise it, the record does not support the ALJ's finding that Plaintiff could perform this work as he had *actually* performed it. The VE testified that Plaintiff performed the work at the medium, not light, exertional level. AR 115. Thus, this report considers Plaintiff's burden at step four to establish his inability to perform his past relevant work as it is *generally* performed.

13

reaching, handling, fingering, and feeling – limitations." *Id*. And, he argues that "the ALJ could not quote the VE's testimony with approval in support of his findings at phase two regarding the postural, manipulative and reaching demands of the Pharmacy Manager position because the VE did not testify on these demands." *Id*. at 6.

This argument's flaw is that the ALJ did not rely on any testimony by the VE as to the specific demands of the job of pharmacy manager. Instead, the ALJ relied on the VE's testimony describing Plaintiff's past work as that of "pharmacy manager," identified in the Dictionary of Occupational Titles (DOT) by the identifier 074-382-010.[5] AR 77, 115. An ALJ may utilize VEs and the DOT in determining the demands of a claimant's past relevant work as it is generally performed in the national economy. *See* 20 C.F.R. § 404.1560(b)(2). And, because "[t]he Dictionary of Occupational Titles # [074-382-010] (4th ed. 1991) explains that the job of [pharmacy manager] is light work *and*

---

[5] The DOT title is "Pharmacy Technician" with the alternate title "Pharmacy Clerk." DOT 074-032-010, 1991 WL 646728.

*describes the demands of the job*,"[6] "the ALJ's phase two findings are adequate." *Parise v. Astrue*, 421 F. App'x 786, 789 (10th Cir. 2010) (emphasis added).[7] The ALJ's reference to the DOT identifier sufficiently described the demands of Plaintiff's past relevant work at phase two.

In apparent recognition of this, Plaintiff then "argues that the ALJ, by virtue of the VE's testimony, erred by finding his PRW was as a Pharmacy Manager." Doc. 13, at 6. He maintains the ALJ's determination "is contrary to the information" he provided to the Social Security Administration in describing his work history. *Id*; *see also* AR 203, 205. He claims that "[o]ther than checking in medicine, [his] description of [the pharmacy manager] job does not match any of the duties of the job as described in the *DOT*." Doc. 13, at 7. He argues that "[u]ndoubtedly, he did work for a pharmacy, but clearly his description of doing ATT, PSO, ONG service and billing and taking care of the drink fountain and ICEE machine indicates that the establishment provided more services than just filling prescriptions." *Id.*

Essentially, Plaintiff disagrees with the evidence provided by the vocational expert that his prior work is classified as that of a "pharmacy

---

[6] *See* DOT 074.382-010, 1991 WL 646728 (listing the postural and manipulative – including reaching – demands of the job).

[7] Plaintiff does not suggest that he lacks the ability to perform the job of pharmacy manager as it is generally performed in the national economy.

15

manager, and that's DOT code 074.382-010 . . . ." AR 115. Although it is his burden to prove that he cannot return to his previous work as actually or generally performed, Plaintiff does not suggest what DOT job classification better describes his prior work than the job of pharmacy manager. *See Hayden v. Barnhart*, 374 F.3d 986, 991 (10th Cir. 2004) ("[I]t was [Plaintiff's] burden to show an inability to perform her past relevant work . . . ."). And, despite his burden, he did not challenge the qualifications of the vocational expert to provide her expert opinion on the issue and, while he cross-examined the expert on other points, he did not question her classification of his prior work. AR at 115, 120. The vocational information Plaintiff provided about his prior work establishes that he performed a combination of duties to assist a pharmacist in a retail establishment to prepare and dispense medication by checking in the medications and stocking, or storing, them. *Id.* at 205.

Plaintiff fails to establish that the ALJ's reliance on the VE's classification of his prior work as that of pharmacy manager, DOT No. 074.382-010, lacks substantial evidentiary support.

### 3. Whether the ALJ erred at phase three in determining if Plaintiff has the ability to meet the job demands found in phase two despite the limitations found in phase one.

Plaintiff "asserts that, because the ALJ erred in his phase-two analysis, his phase-three findings were also deficient." Doc. 13, at 3. He states, "At phase three, []the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *Winfrey*, 92 F.3d at 1023." *Id.* Because the ALJ did not err at phase two, Plaintiff's premise of resulting error at phase three – his only developed claim of error at phase three – fails.[8]

Plaintiff's remaining arguments pertain to the ALJ's alternative findings at step five of the sequential process. Doc. 13, at 7-9; *see also* AR 78-79. Having concluded that the ALJ's step-four determination is supported by substantial evidence and is free from legal error, the undersigned has not considered those arguments.

---

[8] At best, Plaintiff submits that the ALJ must make specific findings at each of the three phases of step four. Doc. 13, at 3. The ALJ did so at each phase, including at phase three. AR 77-78. Plaintiff does not challenge the legal or evidentiary sufficiency of the ALJ's phase-three determination apart from the claimed deficiency resulting from the phase-two findings.

### III. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends the entry of judgment affirming the decision of the Commissioner.

The undersigned advises the parties of their right to object to this Report and Recommendation by the 22nd day of July, 2015, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 2nd day of July, 2015.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE